J-A04030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.D.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| F.W., JR. | |
| Appellee | No. 2792 EDA 2016 |

Appeal from the Order Entered August 3, 2016
In the Court of Common Pleas of Lehigh County
Domestic Relations at No(s): 2014-FC-0538

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED MAY 04, 2017**

Appellant, A.D.W. ("Mother") appeals from a custody order regarding her children, M.C.W. (born 2005) and T.P.W. (born 2008) (collectively "Children"). Mother contends the court abused its discretion and committed an error of law in denying her motion to relocate the primary residence of her and the Children from Pennsylvania to South Carolina. Mother also challenges the decision to change the custody arrangements from Mother having primary custody to both Mother and F.W., Jr. ("Father") having shared physical custody, because Father withdrew his petition to modify the custody arrangement. We affirm.

We adopt the facts as set forth by the trial court:

---

[*] Retired Senior Judge assigned to the Superior Court.

Mother informed Father in writing of her intention to move with [Children], to Moore, South Carolina. Pursuant to Pa.R.C.P. 1915.17 and 23 Pa.C.S.A. § 5337(c), on January 15, 2016[,] Mother served Father with notice of relocation within sixty days of her anticipated move, April 2, 2016. She provided information about the location and her proposed modified custody agreement. Her temporary new address at the home of Maternal Grandmother would be . . . , Moore, South Carolina 29369. She identified the school that the children will be attending . . . .

Mother explained that she was moving because Maternal Grandmother, age 68, semi-retired with health issues, had moved to Moore, South Carolina, and is in need of Mother's physical assistance. She added that there will not be any remaining family for Mother in Pennsylvania. Most importantly, Mother expounded upon her inability to financially support herself in the Lehigh Valley as the result of two events that will occur in the fall of 2016. Pursuant to the Property Settlement Agreement signed by the parties and filed December 21, 2015 in the divorce action, Mother is required to refinance the mortgage on her residence, the marital home, in order to remove Father from mortgage liability.[1] The Property Settlement Agreement also provides that the term of alimony payments to Mother from Husband terminates in December of 2016. As a consequence, Mother explained that she will have to sell the home, move from the residence where she and the children have lived for four years. Mother's income from her part-time employment is insufficient to qualify for refinancing of the mortgage. She proposed that in South Carolina, she will be financially able to support the children where the cost of living is less than in the Lehigh Valley. She purported that the lower cost of

---

[1] The agreement did not require the sale of the marital residence. Rather, the agreement provided that if Mother was unable to assume sole responsibility for the mortgage and release Father from any obligation to pay the mortgage within nine months from the date of the agreement, then the marital residence would be listed for sale. Settlement Agreement, 12/21/15, at 10.

living will create a stable financial environment for her to support the children.

Her proposed custodial schedule is as follows. Mother and Father shall share legal custody; sole physical custody shall be vested in Mother. Father shall exercise six uninterrupted weeks of visitation in the summer beginning immediately after the close of school, during which time he will celebrate his son's birthday, Memorial Day, and Father's Day with the Children. Father will also have one week of custody over the Christmas break from school. In addition, he will have either a week of custody over Spring Break or the majority of Thanksgiving break, depending upon whether the year is 'even' or 'odd.'

Father objected to the relocation and to the modification of the custody schedule set forth in the agreed order of March 26, 2015. On February 10, 2016, he filed a Counter Affidavit regarding relocation and a Petition for Modification. In response, Mother filed an Answer and New Matter on March 16, 2016 requesting that the Court grant her relocation as per the terms of her notice. On April 5, 2016, Father filed his Answer to Mother's New Matter. A custody conference was held in May 2016 and thereafter the matter was listed for trial; trial commenced July 8, 2016 during which an attempt was made to interview the Children. The interview was cancelled; the Court found that both children exhibited substantial anxiety in the Court's presence in response to preliminary attempts to discuss the family. The Court was advised that the Children were also upset in anticipation of coming into court. On or before July 14, 2016, both parties submitted briefs; the matter was taken under advisement. An Order for custody was filed on August [3], 2016; this is the opinion in support of that order.

. . . Mother has not been straightforward in her notice to Father in setting forth her motives for the move. In addition to those reasons identified in the notice, the testimony at trial revealed that Mother had other motives for relocating not revealed in her writing. Mother planned to move to maternal grandmother's home and upon the termination of her alimony, marry her fiancé. Her fiancé is a longtime friend and a South Carolina resident who lives

just ten miles from maternal grandmother's home. Mother and witnesses on her behalf testified that the close proximity of the Mother's proposed South Carolina home and that of Fiancé was not planned; the Court found this to be disingenuous on Mother's part and discourteous to all involved.

\* \* \*

Mother and Father were married January 21, 2003; they lived at Mother's home, . . . , Hellertown, Pennsylvania, until May 2012. In 2012, they purchased the marital residence, . . . , in Emmaus, where the family resided together until separation in April 2014 when Father left the home. Mother and the Children have continued to reside at the marital residence. The residence is currently under an agreement of sale. The divorce was finalized in January 2016. . . .

Mother is . . . age 39. She has been employed part-time as a Salon Coordinator . . . in Bethlehem, Pennsylvania for several years. She works Tuesday thru Saturday for 30 hours a week. Her monthly income is approximately $1,000. She is a graduate of Georgia Southern University with a bachelor's degree in Hotel and Restaurant Management with a minor in Business Administration. After graduation she was employed in her field at Hilton Head Island, SC. She moved to Pennsylvania and purchased a home. She has previously been employed in a beauty salon, Chili's Grill & Bar, and LA Weight Loss Centers, before taking her current job. She has been actively involved in organizing a successful fund raising event each year since maternal grandfather's death due to pancreatic cancer.

Father is . . . age 39. Since separation in April 2014, Father has resided at . . . , Allentown, the home of retired paternal grandparents, . . . . The home is located in the Allentown School District.[2] Father is a veteran, an Army

---

[2] According to the trial court, the Allentown School District "falls short of the quality of education at other suburban school districts," which includes the Children's present school district. Trial Ct. Op., 8/8/16, at 10.

Reservist, and was deployed to Iraq and Kosovo. He is employed as a software implementation engineer . . . since 2007. He works 8 AM until 5 PM Monday thru Friday, and on Tuesday and Thursday he works from home.

The divorce complaint was filed by Mother on April 24, 2014[,] ten days after Father vacated the marital residence. Since separation, Mother has been the primary caretaker of the Children in the marital residence. In December 2014, Mother became engaged to [Fiancé] who has been her friend since high school; they reconnected on Facebook in 2008. Mother and Fiancé have been in a relationship since spring of 2014. Around that same time, the Children met him and, later, in the summer, they vacationed with him and his two children.

On or about this same time, Fiancé, who was residing in North Carolina at that time, had decided to move to South Carolina to be closer to his own children who had relocated with their mother, Fiancé's ex-wife, to Spartanburg, South Carolina. In December 2014, Mother decided to move to South Carolina. Within a month, Fiancé applied for a job in the Spartanburg, South Carolina area and he listed his North Carolina home for sale. After completing his South Carolina educational certification necessary for employment in his field, Fiancé moved from North Carolina in July 2015 to Duncan, South Carolina, approximately fifteen miles from his children. He is employed as an Assistant Principal at the Carver Middle School.

In April 2015 after Mother's decision to move to South Carolina, . . . Maternal Grandmother[] listed her Pennsylvania home for sale, as she, too, had decided to move to South Carolina. In the fall of 2015, Maternal Grandmother purchased [a home in] Moore, South Carolina, the residence to which Mother seeks to relocate. The home is located ten miles from the home of [Fiancé]. Maternal Grandmother, age 68, chose South Carolina allegedly due to its climate and its affordability. She has no relatives in South Carolina; the closest relative is two hours away in Georgia. Maternal Grandmother[] is a cancer survivor, has [chronic obstructive pulmonary disease], arthritis, and carcinoma in her lungs that is in

- 5 -

remission. She is semi-retired and works on-line with a company out of Emmaus, Pennsylvania.

In the meantime, the parties entered into a final custody agreement on March 26, 2015, such that Mother has primary custody of the Children and that Father has periods of partial custody on alternating weekends Friday until Sunday and on alternating Saturdays 10 AM until 3:00 PM and every Tuesday and Thursday 4:30 PM until 7:00 PM. Essentially, Father has contact with the Children no less than every two days.

On December 21, 2015, an agreement was reached regarding the division of the marital property. The parties agreed that Mother could keep possession of the marital home and that she would remove Father's name from the mortgage no later than September 2016. In addition, Father agreed to pay alimony, $714 monthly, until December 2016. After the alimony payments cease at the end of 2016, Mother, who is only employed part-time, will be unable to financially support the marital residence as her home or refinance the mortgage. Mother has chosen to work part time. She has sought employment at one location in the Lehigh Valley. She did not look for full time employment because she was going to relocate to South Carolina.

In January 2016, the parties were divorced and thereafter, Mother provided Father with notice of her intention to move to Moore, South Carolina, approximately 670 miles from Allentown, or a ten hour drive. In March and in April 2016, Mother and the Children spent the weekend with Fiancé at his home in South Carolina. In May 2016, Fiancé was held in contempt in his own custody case, having spent the night with an unmarried woman, Mother, with his kids and the Children. At the hearing[,] he testified that they were engaged since December 2014. The [marriage] date is set for December 2016, after the termination of alimony.

Trial Ct. Op., 8/8/16, at 1-8 (footnotes and citations omitted).[3]

As noted above, Father filed a petition for modification, seeking a change from Mother having primary physical custody to both parents sharing physical custody. Father's Pet. to Modify Custody, 2/10/16, at ¶ 12 (unpaginated). Following a pre-trial conference in June, Father withdrew his petition for modification on July 8, 2016, the day of trial. Final Order, 8/3/16, at 1 n.1. Prior to the start of trial, the court and the parties' counsel discussed whether the issue of custody was properly before the court:

> The court: Where does that leave us?
>
> [Father's counsel]: With just the relocation matter.
>
>     *   *   *
>
> [Mother's counsel]: I'm not sure that that leaves us with just the relocation matter, but if he withdraws it, I guess that's the only thing pending before the court for purposes of this hearing. But there's no issue with respect to primary physical custody residing in my client, even after this hearing concludes; because there's no -- there's no issue before the Court with respect to a change of custody as was in this petition to modify. So I believe that that resolves the issue with respect to whether or not there will be any change in the physical custody. There is joint legal custody between the parties, but my client has primary physical, and [Father] has partial physical [custody].
>
>     *   *   *

---

[3] The opinion is timestamped as "filed" on August 5th, and copies were mailed that same day; but the docket reflects that the opinion was docketed on August 8th.

The court: It begs the question that if her relocation request would be denied, and she moves nevertheless, then the Court would have to rule on some kind of schedule.

[Mother's counsel]: If there's nothing before the court. Am I wrong about that?

The court: No, but that's an absurd result. Her case opens the door.

[Mother's counsel]: [Father's] withdrawing the petition.

* * *

The court: I don't understand why you're withdrawing it.

[Father's counsel]: At the pre-trial conference [held in June], Your Honor noted that you would not grant [Father's] petition [to modify custody] on a hypothetical, that hypothetical being [Father] obtaining an address in the children's school district as he currently lives with his parents [in the Allentown School District]. Given the short time between then and now, he was not able to obtain a residence even though he has done the leg work and is preparing to do so. So at this time in deference to the Court, we would respectfully request to withdraw without prejudice.

[Mother's counsel]: I, too, recall that being said by Your Honor. But even after having heard that said, when I received notice from [Father's counsel that] he was withdrawing his petition, I called him to ascertain why he was doing that. I wanted to be certain of the reason for doing that. He has no place to—the children—well, strike that.

The court: So is there room at his parents' house for the children to live?

[Father's counsel]: Certainly, but it is in the Allentown School District.

The court: So it would be a change in the school district.

- 8 -

[Father's counsel]: And the marital home was listed for sale the day before the pre-trial conference, which gave us very little time to figure out the logistics. We thought the most prudent course of action would be to withdraw as per your statements.

The court: So mother sells the house. We don't know that she will remain in the same school district.

[Father's counsel]: That's correct.

The court: Everything is in the air here for this family. I think that, you know, **your filing this action today opens the door for the court to modify [the] custody arrangement, and not to simply deny relocation.** And you disagree with me on that?

[Father's counsel]: Agree completely.

The court: You agree?

[Father's counsel]: Yes.

The court: All right. Well, are we ready to proceed?

[Mother's counsel]: I am, Your Honor.

R.R. at 108a-09a (emphasis added).[4] Mother's counsel did not object.

At the hearing, Mother testified that she had to move out of the marital home because she could not refinance the mortgage due to an insufficient income. N.T. Hr'g, 7/8/16, at 44. Mother testified that she looked for a three-bedroom home in the Lehigh Valley, but could not afford any. *Id.* at 46. She reiterated her intention to move in with Maternal

_____

[4] We cite to the reproduced record for the parties' convenience.

- 9 -

Grandmother in South Carolina. Mother opined that she found it difficult to apply for jobs in either state because she did not know how or when the court would rule on the relocation petition. *Id.* at 164-65. After the hearing, Mother advised the court that the marital home was under an agreement of sale. Ex. 1 to Trial Ct. Op., 10/4/16 (e-mail dated July 14, 2016, from Mother's counsel to trial court and Father's counsel).

The trial court denied Mother's petition to relocate on August 3, 2016. The court also modified the custody arrangement such that Mother no longer had primary physical custody; rather, the parties shared physical custody equally.[5] Among other things, the order stated that the Children's residence should not be changed to the extent it would "disrupt the custodial schedule." Final Order, 8/3/16, at 7.

Mother timely appealed. She raises the following issues:

> Whether the trial court erred as a matter of law and abused its discretion when it denied Mother's Request for Relocation where she met her burden of proving that the move is in the best interests of the children, where she met her burden of establishing the integrity of her motive in seeking relocation, and when proper consideration is given to the factors enumerated in 23 Pa.C.S.A. § 5337(h) and 23 Pa.C.S.A. § 5328(a)?
>
> Whether the trial court erred as a matter of law and abused its discretion when it modified a custody order

---

[5] Mother would exercise physical custody over the Children from Sunday through Tuesday, Father would exercise custody from Tuesday to Thursday, and then the parties would alternate having custody from Thursday to Sunday. Final Order, 8/3/16, at 2.

pursuant to 23 Pa.C.S.A. § 5338(a), despite [Father's] withdrawal of his petition for modification prior to the trial proceeding; in the absence of another pending petition or another claim for modification by either party; where [Mother's] relocation request was the only claim of either party before the court for disposition; and where [Mother's] request for relocation was denied?

Mother's Brief at 9.

We summarize Mother's arguments with respect to both of her issues: Mother challenges the court's weighing of the relocation factors under 23 Pa.C.S. § 5337(h)(1), (2), (3), (6), and (7), as well as the custody factors under 23 Pa.C.S. § 5328(a)(3), (4), (9), (10), and (12). Mother's Brief at 21. Mother contends the court erred by concluding that she could have obtained full-time employment and refinanced the mortgage, and thus would not have needed to sell the parties' former marital residence. She says that the parties' property settlement agreement required the sale of the home.[6] The court, Mother claims, also improperly weighed her desire to live with her fiancé because she omitted that fact from her notice of relocation.

Mother also objects to the court's decision to modify the Children's custody order even though Father withdrew his petition to modify custody on the day of the hearing. She claims that she was unaware that modification

_____

[6] As noted above, the parties' agreement did not unconditionally require the sale of the marital residence. Rather, under the agreement, Mother was required to assume sole responsibility for the mortgage within nine months. Only if that condition was not met would the residence be listed for sale. Settlement Agreement at 10.

would still be at issue if relocation was denied and claims she lacked notice of that issue. Mother argues the court erred by *sua sponte* transferring primary custody from Mother to a 50/50 shared custody.

We begin by acknowledging our scope and standard of review in custody cases:

> We review the trial court's custody order for an abuse of discretion. We defer to the trial court's factual findings that are supported by the record and its credibility determinations. However, we are not bound by the trial court's deductions or inferences, nor are we constrained to adopt a finding that cannot be sustained with competent evidence. In sum, this Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings.
>
> The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being.

*D.K.D. v. A.L.C.*, 141 A.3d 566, 571-72 (Pa. Super. 2016) (quotation marks and citations omitted), *appeal denied*, No. 330 WAL 2016, 2016 WL 6462545 (Pa. 2016).

When considering whether to grant relocation, the court must analyze the ten factors set forth in the relocation provision of the Custody Act, 23 Pa.C.S. § 5337:

> **(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

When considering a change of custody, the court must consider the factors listed in Section 5338(a) of the Custody Act, 23 Pa.C.S. § 5338(a). Mother challenges the court's consideration of the following of these factors:

> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> * * *
>
> (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
>
> (10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
>
> * * *
>
> (12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

23 Pa.C.S. § 5328(a)(3)-(4), (9)-(10), (12).

After careful consideration of the record, the parties' briefs, and the decisions of the Honorable Michele A. Varricchio, we agree with the decision to deny relocation and to change custody on the basis of the trial court's decisions. **_See_** Trial Ct. Op., 10/4/16, at 3-21;[7] Trial Ct. Op., 8/8/16, at 8-

_____

[7] The opinion was timestamped as filed on September 30, 2016. The docket, however, states the opinion was docketed on October 4, 2016, and copies were mailed to counsel on October 3, 2016.

17 (discussing, in detail, the relevant factors regarding relocation and shared physical custody).[8]

We hold that the trial court did not err in considering the custody issue even though Father had withdrawn his petition to change the custody arrangement. As the trial court held, the parties had notice that the custody issue was before the court prior to the last-minute withdrawal of Father's petition, and both parties introduced evidence regarding the relevant custody issues, as well as relocation, during the hearing. *See* Trial Ct. Op., 10/4/16, at 8-10. We add that Mother's counsel acquiesced to a potential custody modification by not objecting to the court's observation that the parties' custody arrangements were open to modification. Mother knew that even if her relocation petition was denied, she still would have to move to a new home because the marital home was under an agreement of sale, and, depending on the location of her new residence, a new arrangement for custody might be required. *See* Ex. 1 to Trial Ct. Op., 10/4/16 (e-mail regarding agreement of sale). We do not fault the trial court for electing to

---

[8] Somewhat confusingly, the trial court stated that "At the time of the [July 8, 2016] relocation hearing, the marital home was under contract for sale." Trial Ct. Op., 10/4/16, at 5. The court then cited an e-mail dated July 14, 2016 — after the hearing — from Mother's counsel that advised the court that the home was under an agreement of sale. *Id.* The court's error, however, is immaterial, as the court made its first ruling on August 5, 2016, after both the hearing and the e-mail. We also note that on page five of the trial court's October 4, 2016 opinion, and page eleven of the trial court's August 5, 2016 opinion, the citation to *Hugo v. Hugo* should be: 4**3**0 A.2d 1183 (Pa. Super. 1981).

address the parties' custodial arrangements because of the uncertainty about where the Children would reside due to the court's denial of Mother's petition to relocate. So long as "the parties had notice that custody would be at issue, the court is permitted to modify custody without a pending petition for modification." *C.A.J. v. D.S.M.*, 136 A.3d 504, 509 (Pa. Super. 2016).

Given the trial court's thorough consideration of the record and our deferential standard of review regarding credibility and weighing of the relevant factors, we cannot conclude, based on this cold record, that the trial court's findings are unreasonable. *See D.K.D.*, 141 A.3d at 571-72. Accordingly, we affirm the order below. The parties are instructed to include the attached trial court opinions in any filings referencing this Court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2017

- 16 -

# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CIVIL DIVISION

A████ D███ W████████          )  No. 2014-FC-0538
        **Plaintiff**          )
                                             )

vs.          )  **CUSTODY**
                                             )

F███ W████████, JR.,          )  **ASSIGNED TO:**
        **Defendant**          )  **The Honorable Michele A. Varricchio**

Appearances:

    John J. Zettlemoyer, Jr., Esquire
        For Plaintiff

    Daniel E. Taglioli, Esquire
        For Defendant

*******

## MEMORANDUM OPINION

**MICHELE A. VARRICCHIO, Judge**

Mother informed Father in writing of her intention to move with the minor children, T██████ W████, age 7, and M██████████ W████ age 11, to Moore, South Carolina. Pursuant to Pa.R.C.P. 1915.17 and 23 Pa.C.S.A.§5337(c), on January 15, 2016 Mother served Father with notice of relocation within sixty days of her anticipated move, April 2, 2016. She provided information about the location and her proposed modified custody agreement. Her temporary new address at the home of Maternal Grandmother would be ████████████, Moore, South Carolina 29369. She identified the school that the children will be attending as ██████ Elementary School in ████████████.

1

Mother explained that she was moving because Maternal Grandmother, age 68, semi-retired with health issues, had moved to Moore, South Carolina, and is in need of Mother's physical assistance. She added that there will not be any remaining family for Mother in Pennsylvania. Most importantly, Mother expounded upon her inability to financially support herself in the Lehigh Valley as the result of two events that will occur in the fall of 2016.

Pursuant to the Property Settlement Agreement signed by the parties and filed December 21, 2015 in the divorce action, Mother is required to refinance the mortgage on her residence, the marital home, in order to remove Father from mortgage liability. The Property Settlement Agreement also provides that the term of alimony payments to Mother from Husband terminates in December of 2016. As a consequence, Mother explained that she will have to sell the home, move from the residence where she and the children have lived for four years. Mother's income from her part-time employment is insufficient to qualify for refinancing of the mortgage. She proposed that in South Carolina, she will be financially able to support the children where the cost of living is less than in the Lehigh Valley. She purported that the lower cost of living will create a stable financial environment for her to support the children.

Her proposed custodial schedule is as follows. Mother and Father shall share legal custody; sole physical custody shall be vested in Mother. Father shall exercise six uninterrupted weeks of visitation in the summer beginning immediately after the close of school, during which time he will celebrate his son's birthday, Memorial Day, and Father's Day with the Children. Father will also have one week of custody over the Christmas break from school. In addition, he will have either a week of custody over Spring Break or the majority of Thanksgiving break, depending upon whether the year is 'even' or 'odd.'

Father objected to the relocation and to the modification of the custody schedule set forth in the agreed order of March 26, 2015. On February 10, 2016, he filed a Counter Affidavit regarding relocation and a Petition for Modification.[1] In response, Mother filed an Answer and New Matter on March 16, 2016 requesting that the Court grant her relocation as per the terms of her notice. On April 5, 2016, Father filed his Answer to Mother's New Matter. A custody conference was held in May 2016 and thereafter the matter was listed for trial; trial commenced July 8, 2016 during which an attempt was made to interview the Children. The interview was cancelled; the Court found that both children exhibited substantial anxiety in the Court's presence in response to preliminary attempts to discuss the family. The Court was advised that the Children were also upset in anticipation of coming into court. On or before July 14, 2016, both parties submitted briefs; the matter was taken under advisement. An Order for custody was filed on August 2, 2016; this is the opinion in support of that order.

Mother carries the burden of establishing that the relocation will serve the best interest of the Children as shown under the relocation factors. 23 Pa.C.S.A. § 5337(i)(1). Mother also has the burden of establishing the integrity of her motives in seeking the relocation. 23 Pa.C.S.A. § 5337(i)(2). Father has the burden of establishing the integrity of his motive in seeking to prevent the relocation. Id. Mother has not been straightforward in her notice to Father in setting forth her motives for the move. In addition to those reasons identified in the notice, the testimony at trial revealed that Mother had other motives for relocating not revealed in her writing. Mother planned to move to maternal grandmother's home and upon the termination of her alimony, marry her fiancé. Her fiancé is a longtime friend and a South Carolina resident who lives just ten

---

[1] At the time of trial, Father withdrew his Petition to Modify.

3

miles from maternal grandmother's home. Mother and witnesses on her behalf testified that the close proximity of the Mother's proposed South Carolina home and that of Fiancé was not planned; the Court found this to be disingenuous on Mother's part and discourteous to all involved. 23 Pa.C.S.A. § 5337(h)(8).

Nevertheless, our focus in deciding this case is not the equity of the parties, but rather, the best interests of the Children. The best interests of the Children are the paramount consideration in a custody proceeding. *A.V. v. S.T.*, 87 A.3d 818, 822 (Pa.Super. 2014); *S.J.S. v. M.J.S.*, 76 A.3d 541, 548 (Pa.Super. 2013). The determination of best interests must be done on a case-by-case basis, based upon a "consideration of all factors that legitimately affect the children's physical, intellectual, moral and spiritual well-being." *McAlister v. McAlister*, 747 A.2d 390, 391 (Pa. Super. 2000). The case at hand involves the relocation of the Children. Mother has the burden of establishing that the relocation will serve the best interest of the Children. 23 Pa.C.S.A. § 5337. For the reasons set forth below, Mother has not met her burden. This Court rejects the proposed relocation. Mother is precluded from relocating to South Carolina with the Children.

In that Father filed a counter-affidavit regarding relocation which indicated that he objects to the proposed relocation or to the modification of the custody order consistent with the proposal for revised custody schedule, the court determined the terms and conditions of the terms of custody and entered an order for shared physical custody. 23 Pa.C.S.A. § 5337 (f)

**Facts**

Mother and Father were married January 21, 2003; they lived at Mother's home, ████ ████, Hellertown, Pennsylvania, until May 2012. In 2012, they purchased the marital

4

residence, ████████, in Emmaus, where the family resided together until separation in April 2014 when Father left the home. Mother and the Children have continued to reside at the marital residence. The residence is currently under an agreement of sale. The divorce was finalized in January 2016. During the marriage two children were born, M████ W███, born June 22, 2005, and T██████ W███, born October 27, 2008.

Mother is A██ D█ W███, age 39. She has been employed part-time as a Salon Coordinator at ██████████ in Bethlehem, Pennsylvania for several years. She works Tuesday thru Saturday for 30 hours a week. Her monthly income is approximately $1,000. She is a graduate of Georgia Southern University with a bachelor's degree in Hotel and Restaurant Management with a minor in Business Administration. After graduation she was employed in her field at Hilton Head Island, SC. She moved to Pennsylvania and purchased a home. She has previously been employed in a beauty salon, Chili's Grill & Bar, and LA Weight Loss Centers, before taking her current job. She has been actively involved in organizing a successful fund raising event each year since maternal grandfather's death due to pancreatic cancer.

Father is F██ W████ Jr., age 39. Since separation in April 2014, Father has resided at ██████████, Allentown, the home of retired paternal grandparents, F██ W███, Sr., and R██ W███. The home is located in the Allentown School District. Father is a veteran, an Army Reservist, and was deployed to Iraq and Kosovo. He is employed as a software implementation engineer with ██████████ Pottsville, Pennsylvania since 2007. He works 8 AM until 5 PM Monday thru Friday, and on Tuesday and Thursday he works from home.

The divorce complaint was filed by Mother on April 24, 2014; ten days after Father vacated the marital residence. Since separation, Mother has been the primary caretaker of the Children in the marital residence. In December 2014, Mother became engaged to C███████ M██-W███ (Fiancé)[2] who has been her friend since high school; they reconnected on Facebook in 2008. Mother and Fiancé have been in a relationship since spring of 2014. Around that same time, the Children met him and, later, in the summer, they vacationed with him and his two children.

On or about this same time, Fiancé, who was residing in North Carolina at that time, had decided to move to South Carolina to be closer to his own children who had relocated with their mother, Fiancé's ex-wife, to Spartanburg, South Carolina. In December 2014, Mother decided to move to South Carolina. Within a month, Fiancé applied for a job in the Spartanburg, South Carolina area and he listed his North Carolina home for sale. After completing his South Carolina educational certification necessary for employment in his field, Fiancé moved from North Carolina in July 2015 to Duncan, South Carolina, approximately fifteen miles from his children. He is employed as an Assistant Principal at ██████████ School.

In April 2015 after Mother's decision to move to South Carolina, D███ R██████, Maternal Grandmother, listed her Pennsylvania home for sale, as she, too, had decided to move to South Carolina. In the fall of 2015, Maternal Grandmother purchased ███████████, Moore, South Carolina, the residence to which Mother seeks to relocate. The home is located ten miles from the home of C███████ M██-W███ (Fiancé). Maternal Grandmother, age 68, chose South Carolina allegedly due to its climate and its affordability. She has no relatives in

---

[2] Mother's fiancé's last name is W████, there is no relation to Father.

South Carolina; the closest relative is two hours away in Georgia. Maternal Grandmother's is a cancer survivor, has COPD, arthritis, and carcinoma in her lungs that is in remission. She is semi-retired and works on-line with a company out of Emmaus, Pennsylvania.

In the meantime, the parties entered into a final custody agreement on March 26, 2015, such that Mother has primary custody of the Children and that Father has periods of partial custody on alternating weekends Friday until Sunday and on alternating Saturdays 10 AM until 3:00 PM and every Tuesday and Thursday 4:30 PM until 7:00 PM. Essentially, Father has contact with the Children no less than every two days.

On December 21, 2015, an agreement was reached regarding the division of the marital property. The parties agreed that Mother could keep possession of the marital home and that she would remove Father's name from the mortgage no later than September 2016. In addition, Father agreed to pay alimony, $714 monthly, until December 2016. After the alimony payments cease at the end of 2016, Mother, who is only employed part-time, will be unable to financially support the marital residence as her home or refinance the mortgage. Mother has chosen to work part time. She has sought employment at one location in the Lehigh Valley. She did not look for full time employment because she was going to relocate to South Carolina.

In January 2016, the parties were divorced and thereafter, Mother provided Father with notice of her intention to move to Moore, South Carolina, approximately 670 miles from Allentown, or a ten hour drive. In March and in April 2016, Mother and the Children spent the weekend with Fiancé at his home in South Carolina. In May 2016, Fiancé was held in contempt in his own custody case, having spent the night with an unmarried woman, Mother, with his kids

7

and the Children. At the hearing he testified that they were engaged since December 2014. The date is set for December 2016, after the termination of alimony.

## FURTHER FINDINGS AND DISCUSSION

In deciding this matter, the Court must consider the factors for awarding custody, 23 Pa.C.S.A. § 5328(a), and the relocation factors, 23 Pa.C.S.A. § 5337(h), listed in Pennsylvania's custody statute, 23 Pa.C.S.A. §§ 5321–40; see *E.D. v. M.P.*, 33 A.3d 73 (PA.Super.2011). Where relocation will result in a change in the type of physical custody award, as with any award of custody, the court must also apply the custody factors set forth in Section 5328(a) of the Custody Statute. *A.V. v. S.T.*, 87 A.3d 818 (Pa.Super.2014). Section 5337 also alters the legal standards that a trial court must consider when ruling on a request to relocate. Under prior practice, trial courts considered relocation requests based exclusively upon the tripartite test set forth in *Gruber v. Gruber*, 583 A.2d 434, 439 (Pa.Super. 1990). Under the Child Custody Act, however, trial courts must consider the ten relocation factors listed in subsection 5337(h) as well as the sixteen custody factors in section 5328. *E.D.*, 33 A.3d at 79.[3]

---

[3] There are statutory factors for awarding custody and for relocation that are not issues in this case. There were no allegations that either parent withheld the Children from the other parent. The current custody schedule was agreed upon and provides Father with frequent contact. There was no allegation of a pattern of conduct of either parent to promote or thwart the relationship with the other parent. 23 Pa.C.S.A. § 5328(a)(1) 23 Pa.C.S.A. § 5337(h)(5). There was no testimony of attempts by either party to turn the children against the other parent, 23 Pa.C.S.A. 5328(a)(8). There have been no issues of child abuse or involvement of protective services. 23 Pa.C.S.A. § 5328(a)(2.1). The Children are not being separated and there is no step or half siblings to be considered, 23 Pa.C.S.A. § 5328(a)(6). The relocation factors and the custody factors consider the preference of the Children. 23 Pa.C.S.A. § 5337(h) (4) and 23 Pa.C.S.A. § 5328(a)(7). While the Court believes that the Children are old enough to comprehend the custody litigation, the Court chose not to interview them. The Children were visibly upset at an attempt to interview them and were upset prior to coming into Court. The Court concluded that given their maturity it would not be in their best interview to subject them to an interview. Neither parent insisted that they be interviewed. There was no issue that with either party's availability to care for the child or ability to make appropriate child-care arrangements. 23 Pa.C.S.A. § 5328(a)(12). There is no history of drug or alcohol abuse of a party or member of a party's household or mental or physical condition that impacts custody. 23 Pa.C.S.A. § 5328(a)(14) and (15).

8

During the marriage, and after separation, and divorce, Mother has been the Children's primary caretaker. 23 Pa.C.S.A. § 5328(a)(3); 23 Pa.C.S.A. § 5337(h)(1). Mother has maintained a stable and steady environment for the growth and development of the Children. She was the parent primarily responsible for attending to the Children's physical, educational, and medical needs. She was the parent available to care for the Children in that Father was the traditional breadwinner. Mother worked part-time during school hours. Father has worked full time, two days of the week out of the home.

Since separation, Father's interaction with the Children has changed in that he now is responsible for performing parental duties that otherwise had been solely Mother's responsibility. He feeds them, clothes them, addresses their educational needs, plays with them and otherwise engages in their development. He has done so consistently and regularly. The nature of the relationships between each child and each parent is unique. For instance, Mother generally takes T███ to dance classes. Mother testified that T███ did not want Father to take her to her dance classes, insinuating something negative between T███ and Father. It was later revealed that T███ did not want Father to see her practice, so that when he attended the recital he would be surprised.

It cannot be denied that Mother has raised issues with Father's parental care regarding meals, medication, and tardiness. The complaints taken individually or taken all together do not rise to a level that one would reasonably conclude that Father is not a good parent. In fact, Mother stated that she trusted Father as a parent. The issues seemed more about the parents' separation, frustration with the circumstances and refusal to communicate with each other. These issues ceased after communication between the parties. Historically, Mother has been the

9

dominant parent in terms of parental responsibilities, such as education and medical appointments. However, Father has demonstrated his ability to fulfill his parental responsibilities. Finally, in so far as Mother has offered Father more than a month of consecutive custody in her custody proposal, she cannot argue that Father is unable to be a responsible parent for his Children.

Both parties are committed parents. Father has been the traditional breadwinner and has had less time available to care for the Children. Despite this, he has exercised frequent and regular contact. Meanwhile, Mother has been the stable and steady caretaker, tending to educational and medical needs. Father has been actively involved in the Children's lives on a weekly basis. Both parents have demonstrated their ability to attend to the daily physical, emotional, developmental, educational and special needs of the children. 23Pa.C.S.A.§5328(a)(10). Moreover, both parents have equally established that they are able to maintain a loving, consistent, and nurturing relationship with the children adequate for the children's emotional needs. 23 Pa.C.S.A. § 5328(a)(9).

Stability is also an element of this factor. Both parents are at a crossroads as far as housing. Admittedly, Father has been strapped with child support payments and alimony payments. The alimony terminates in December 2016. Father has expressed his desire to move from paternal grandparents home. The home is located in the Allentown School District which falls short of the quality of education at other suburban school districts. A change in residence is in Father's future. Similarly, as a consequence of the termination of alimony and Mother's failure to find full time employment, Mother and Children will be vacating the residence where the Children have resided for the past four years. Other than one application for employment in

the Lehigh Valley, Mother did not look for work because she was moving to South Carolina. According to Mother, the proposed stay at the maternal grandmother's home is just temporary until she is married and able to relocate with her future husband. In conclusion, at this time, it appears that Father is more stable in his circumstances; however, this is but one factor.

In addition, the court must consider the need for stability and continuity in the Children's education, family life, and community life. 23 Pa.C.S.A. § 5328(a)(4). This Court has long recognized that the removal of a young child from his environment is a factor which bears upon its emotional well-being." *Hugo v. Hugo*, 420 A.2d 1183 (Pa.Super. 1981). A disruption of an established pattern of care and emotional bonds is detrimental to a child. Unfortunately, in this case, Mother has already disrupted any established pattern. She failed to seek employment sufficient to maintain the marital residence. Regardless of the court's decision, the Children will have to move. It is clear there will be a substantial disruption to Children's established routines and family life. It is unknown to the Court where the Children will attend school this fall.

The Children are both excellent students. They do not attend the same school. ▮▮, age 7, has attended ▮▮▮▮▮▮School for two years. This fall, she will be in second grade. She has participated in dance for four years. She currently attends ▮▮▮ gymnastics and intends to participate in the fall. She has established relationships and routines as a result of the time that she has been involved in school, dance, and gymnastics. M▮▮ has attended ▮▮▮▮▮▮ School for the past four years. In the fall he will be in the sixth grade. He achieved all A's and is Satisfactory to Excellent in all subject matters. He attended kindergarten and first grade in ▮▮▮▮ Elementary School. M▮▮ has been at his school

11

for several years and has developed relationships there and familiarity in his neighborhood as well.

A consideration in a relocation case is the age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child. 23 Pa.C.S.A. § 5337(h)(2). The stability and continuity in education and environment are important. Relocating Children to a new school, away from Father, paternal grandparents, paternal aunt and extended family, and friends would be a significant disruption in their routine.

Both parents are actively involved with the Children. Mother has been a part-time stay at home caretaker for the Children, Father exercises a custody schedule that allows him to be involved frequently during the week. There is no evidence that one parent's relationship with the children is by nature better, more extensive, of a better quality, or more involved than the other parent. The Children have a very close relationship with their Mother who has been their primary custodian. Equivalently, the Children have an attachment to their Father. 23 Pa.C.S.A. § 5337(h)(1).

The same could be said of the extended family. The Children have relationships with their grandparents. The parents resided with maternal grandparents for a period of time prior to moving into the marital residence. Maternal Grandmother lived with Mother and the Children during the summer of 2015. The Children have seen less of her since she moved to South Carolina, but they have visited several times since. The Children stay at the home of Paternal Grandparents during Father's periods of custody. Paternal aunt provides child care for the

12

Children on behalf of Mother. In addition, the Children have developed a relationship with Fiancé and his children. 23 Pa.C.S.A. § 5328(a)(5).

Pursuant to 23 Pa.C.S.A. § 5337(h)(7) the court must evaluate whether the relocation will enhance the general quality of life for the children, including, but not limited to, financial or emotional benefit or educational opportunity. Mother has not obtained employment in South Carolina. The qualities of the schools are the similar to those that the Children currently attend. Here, the benefits of the move to Children are no greater than remaining in Pennsylvania. There may be excellent schools in South Carolina, but there is no evidence that any of the schools Children have attended are sub-par.

The Children's general quality of life will not be enhanced, largely due to the lack of proximity of the residences of their parents. 23 Pa.C.S.A. § 5328(a)(11). Previously, the parties lived in the same County and regular contact among the parents and Children were achieved easily. Father has regular physical contact with the Children at least every two days; this is impossible if the children live hours away. The relationship as it is now is extremely difficult to preserve over such a distance, especially given the tender age of the Children. Communication via Skype can preserve face time and children are said to be resilient and can adapt. However, computers cannot recreate cuddling with a child and a storybook or tucking the child into bed. 23 Pa.C.S.A. § 5337(h)(3).

The distance is substantial, which would prevent frequent visits, and funding travel may be cost-prohibitive. Father's physical custody of the Children would be reduced, unfortunately, to three times per year due to the distance and expense. The only means of frequent communication would be via phone or computer. Although Mother proposed a substitute

13

custody arrangement, summers with Father would not adequately substitute for the consistent weekly contact between Father and Children. The relocation to South Carolina would not adequately foster an ongoing relationship between Children and Father. The Children would be deprived of substantial periods of time with Father. There is a limited time period in a child's life when the child should be forming relationships with both parents. The distance is prohibitive to maintaining the relationship.

Next, the court must evaluate whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity. 23 Pa.C.S.A. § 5337(h)(6) Mother's proposed relocation is without an immediate financial plan. She explained that once she is married there will be a dual income household able to provide for a home. She explained her fiancé will financially support her, and that the kids will be able to do more because of more income in the household. She is confident that she is able to find employment in South Carolina. However, she never looked for this type of work in the Lehigh Valley in order to sustain herself for the sake of the stability of the family here in the Lehigh Valley. She made an inadequate attempt to obtain full time employment in order to retain the marital residence. Were this Court to grant Mother's request to relocate and then Mother and fiancé end their relationship, the Children's lives would be thrown into complete turmoil, especially because Mother has no means to support herself. The Court will not risk putting Children into such a situation, especially when there are viable options with Father. See *S.J.S.*, 76 A.3d at 552.

Without a doubt, Mother's relocation is to her emotional benefit. She is engaged to be married to a longtime friend. Her own mother has relocated to that area. It is clear Mother looks

14

forward to starting anew. Mother described that she wanted to move so that she could give her children a family environment where the parents share the same morals and values, drives and ambitions, to help each other and to create that family for her Children. She believes that her own happiness will trickle down to the Children. Her plans, however, overlook a significant figure in the Children's lives –their father.

The Court does not doubt that there have been difficult times for Mother. She described multiple occasions of verbal abuse, sometimes in the presence of the Children. There has never been a risk of harm to the children. Each party is adequately fit to provide safeguards and supervision of the Children. Abuse, present and past abuse committed by a party or member of the party's household, is a factor. 23 Pa.C.S.A. § 5328(a)(2), 23 Pa.C.S.A. § 5337(h)(9). There was credible testimony of Father using inappropriate language towards Mother and two instances of physical confrontation. This event occurred due to the stress and circumstances of the dissolution of the family and the heightened conflict that result from frustration. There is no excuse for such behavior; however, it has not been pervasive throughout. There is no continued risk of harm to Mother. There is conflict between the parents; however the parents are intelligent and self-respecting such that the conflict has not interfered with custodial arrangements. Despite the tension and strain, each parent is able to remain focused on the best interests of the Children and demonstrate a willingness to cooperate with each other. 23 Pa.C.S.A. § 5328(a)(13).

Finally, the court must also evaluate the reasons and motivations and integrity of Father who opposes the relocation. 23 Pa.C.S.A. § 5337(h)(8), 23. Pa.C.S.A. § 5337(i)(2). The Court concludes that Father's motives for opposing relocation are to preserve his relationship with the Children as well as his family's relationship with the Children.

## CONCLUSION

In conclusion, Mother said she was relocating because she cannot maintain the current home and the cost of living in Emmaus, Pennsylvania, however, she does not have employment or a source of income in South Carolina. She is interested in work in the non-profit sector and hotel or restaurant work, but only in South Carolina. She is relocating to assist maternal grandmother who is in need of physical support due to her health issues, but she doesn't explain who will help Maternal Grandmother after Mother relocates with her future husband. Mother wanted to relocate during the school year to a situation that lacks permanency and is subject to change.

In *S.J.S. v. M.J.S.*, Mother's relocation with paramour was denied although Mother was previously primary caretaker. 76 A.3d at 543. Mother (S.J.S.) wished to move with children seven-and-a-half hours from Father and her previous home. Id. at 546. The Trial Court examined the factors and appropriately ruled on both parental custody and mother's relocation request. Id. at 549. The Trial Court found, and the Superior Court affirmed, denying Mother's request to relocate, when the benefits to children were not exclusive to the new location was appropriate. Id. at 554. Mother's request to relocate centered on accommodating Mother's paramour's desire to move. Id. at 553. Mother also argued there were excellent schools in the proposed relocation area. Id. at 551.

All the factors were examined in S.J.S., but the Court found that Mother's wish to relocate did not outweigh the detrimental effect on Father's time and relationship with children especially considering that Mother's reasons for the relocation lacked integrity. Id. at 553. The Trial Court emphasized the stability of the children's relationships in their current area and found

16

both parents were capable of being fit and caring. Id. at 552. With only a seven-and-a-half-hour drive separating the current location to the potential relocation, the Trial Court found no adequate partial custody arrangements existed that would preserve the relationship of children with their father. Id. at 554.

It "is the fact-finder's sole prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony." *Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa.Super. 2014) (quoting *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa.Super. 2013)). This Court has found Father to be credible and earnest. This Court concludes Mother may steer the ship, but her actions come across as calculating. Father has been involved weekly with Children. If the Children moved to South Carolina, the Children would be missing the opportunity to develop a meaningful relationship with Father and Father would not have the opportunity to share in love and rearing of the Children. Mother's proposed custody arrangement would eliminate the weekly contact that has been critical for providing the Children with the opportunity to bond with Father and his extended family.

A new life in South Carolina is not worth the expense to the Children by uprooting them from Father, school, friends, and extended family while creating instability in their lives. The benefits to the Children are not exclusive to South Carolina and do not outweigh the detrimental effect on Father's time and relationship with Children. Mother has not met her burden that relocation is in Children's best interests.

Date:   August 5, 2016

_____
**Michele A. Varricchio, J.**

17

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION**

| | | | |
|---|---|---|---|
| A. D. W., | | ) | No. 2014-FC-0538 |
| | Plaintiff/Appellant | ) | |
| | | ) | |
| vs. | | ) | CUSTODY |
| | | ) | |
| F. W., JR., | | ) | ASSIGNED TO: |
| | Defendant/Appellee | ) | The Honorable Michele A. Varricchio |

**Pa. R.A.P. 1925(a) STATEMENT**

AND NOW, this 2*th* day of September, 2016, the undersigned enters the following

statement pursuant to Pennsylvania Rules of Appellate Procedure 1925(a):

On August 1, 2016, this Court entered a Final Custody Order denying

Appellant/Mother's request to relocate with the children, M.C.W. born June 22, 2005, and

T.P.W. born October 27, 2008, hereinafter referred to as children and modifying its previous

Custody Order of March 26, 2015, to give Mother and Father shared physical custody of the

children. On August 25, 2016, Appellant A.D.W. (Mother), contemporaneously filed her Notice

of Appeal to the Superior Court Docket Number 2792 EDA 2016 from the Court's August 1,

Final Custody Order and a *Motion for Reconsideration of Final Custody Order pursuant to

Pa.R.C.P.* 1930.2. Due to the Children's Fast Track designation, Mother simultaneously filed

her *Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b)* with

her Notice of Appeal . This Court dismissed Mother's *Motion for Reconsideration* as moot by

Order of Court dated September 22, 2016.

In her Concise Statement of Matters of Errors Complained of on Appeal, Mother raises

twelve issues from which the following is taken verbatim:

1. The Honorable Court committed an error of law and abuse of discretion in
denying Mother's request for permission to relocate the children to a new

residence in South Carolina.

2. The Honorable Court committed an error of law and abuse of discretion in concluding that it would not be in the children's best interest to be in their Mother's primary physical custody.

3. The Honorable Court's decision awarding shared physical custody to Father was against the weight of the evidence, and constituted an error of law and abuse of discretion.

4. The Honorable Court was in error in that it granted a modification of the custody order pursuant to 23 Pa.C.S.A. §5337 (f), where the Plaintiff's request for relocation was denied.

5. The Honorable Court was in error in that it granted a modification of the custody order, despite Defendant's withdrawal of his Petition for Modification during the trial and in the absence of another pending Petition or other claim for modification.

6. The Honorable Court was in error in that it modified the custody order after denying Plaintiff's request for permission to relocate the children, where Plaintiff's relocation request was the only claim of either party before the court for disposition.

7. The Honorable Court was in error in that it inadequately weighed the factors under 23 Pa.C.S.A. §5328(a), in its determination that the children's best interests required an award for shared physical custody.

8. The Honorable Court was in error in that it inadequately weighed the factors under 23 Pa. C.S.A. §5328(a)(3), (9), (10), and (12) in its determination that the children's best interests required an award for shared physical custody.

9. The Honorable Court was in error in that it inadequately weighed Mother's role as primary caretaker of the children in its determination that the children's best interests required an award for shared physical custody.

10. The Honorable Court was in error in that it improperly concluded that the Father is more stable in his circumstances, because the Mother intended to vacate the former marital residence and it was "unknown to the court where the Children will attend school this fall."

11. Where the Father had also indicated an intention to move to a new residence in the near future the Honorable Court erred in finding that Father is the more stable parent with respect to his residence.

12. Where the court had just denied the planned relocation of Mother, the Honorable Court erred in weighing against Mother the immediate uncertainty with respect to the children's schooling as an indication of Mother's instability supporting the court's modification of Mother's primary physical custody to an award of shared physical custody.

Appellant/Mother's Concise Statement of Errors Complained of on Appeal, ¶1-12. The Court

adequately addressed Mother's first two contentions of error and the procedural and factual

background of the case in the August 5, 2016, Memorandum Opinion entered in support of the

2

August 1, 2016 Final Custody Order and we incorporate the August 5th Opinion herein.

Additionally, credibility of the parties played a role in this Court's decision to deny the

relocation; some witnesses were more credible than others. Here the Court did not find Mother

to be a credible witness about the integrity of her motives in pursuing the relocation.

**Standard of Review**

Appellate Courts review custody orders using a gross abuse of discretion standard.

*Ottolini v. Barrett,* 954 A.2d 610, 612 (Pa. Super. 2008). As set forth by the Pennsylvania

Supreme Court the standard of review of "an appellate court reviewing a child custody order, is

of the broadest type; the appellate court is not bound by the deductions or inferences made by the

trial court from its findings of fact, nor must the reviewing court accept a finding that has no

competent evidence to support it." *Moore v. Moore,* 634 A.2d 163, 168 (Pa. 1993)(internal

citations). The Court continued,

> [h]owever this broad scope of review does not vest in the reviewing Court the
> duty or the privilege of making its own independent determination. Thus an
> appellate court is empowered to determine whether the trial court's
> incontrovertible factual findings support its factual conclusions, but it may not
> interfere with those conclusions unless they are unreasonable in view of the trial
> court's factual findings; and thus, represent a gross abuse of discretion.

*Moore,* 634 A.2d at 168 (internal citations omitted). "In addition, with regards to issues of

credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and

assessed the witnesses first-hand." *V.B. v. J.E.B.,* 55 A.3d 1193, 1197 (Pa. Super.

2012)(citations omitted). Moreover, "[i]f a trial court, in reaching its conclusion, overrides or

misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a

conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of

record, then discretion is abused." *Ottolini,* 954 A.2d at 612, relying on *Bonawits v. Bonawits,*

3

907 A.2d 611, 614 (Pa. Super. 2006). The close comprehensive review of custody cases is "to ensure that the best interests of the child are being served." Bertin, Pennsylvania Child Custody: Law, Practice, and Procedure (2016 ed.); *Mahoney v. Mahoney*, 51 A.2d 694 (Pa. 1986).

**Award of Shared Physical Custody**

Mother's third contention of error is that the Court's decision to award shared physical custody to Father was against the weight of the evidence, and constituted an error of law and abuse of discretion. It is well settled that:

> Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. §5338. The best[-]interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

*R.S. v. T.T.*, 113 A.3d 1254, 1258 (Pa. Super. 2015). When considering a possible change in custody, the Pennsylvania Superior Court has admonished trial courts that,

> it is incumbent on the court to fully discuss the possible effect on the child of the proposed transfer of custody." *E.A.L. v. L.J.W.*, 443 Pa.Super. 573, 662 A.2d 1109, 1117 (1995) (quotation and citation omitted). *See also Masser v. Miller*, 913 A.2d 912, 921 (Pa.Super.2006) (quoting *Johns v. Cioci*, 865 A.2d 931, 937 (Pa.Super.2004)) ("The court must give attention to the benefits of continuity and stability in custody arrangements and to the possibility of harm arising from disruption of longstanding patterns of care.").

*R.S. v. T.T.*, 113 A.2d at 1261. When considering an award of shared physical custody the Court is to consider:

> [i]n determining whether to award shared [ ] custody, the trial court must consider the following factors: (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible.

4

*R.S. v. T.T.*, 113 A.3d at 1260 relying on *Yates v. Yates*, 963 A.2d 535, 542 (Pa. Super. 2008).

Here, both children were born into an intact marriage between Mother and Father. They resided with both parents and were cared for by both parents in one home until April of 2014. Mother worked part time so that she could care for the children in the home and Father arranged his work schedule to work two days out of the home to be available for the children. After Father separated from Mother, the children continued to reside at the marital residence with Mother. The Court entered the prior custody order by agreement before reaching a custody trial on March 26, 2015.

Pursuant to the March 26, 2015, Order of Court, the children continued to see both Mother and Father with no more than two days separation. Though the children visit with Father for two nights during the school week, the children have had the advantage of being able to sleep in their normal beds at the marital residence for at least five nights a week since the parties' separation, which has created stability and consistency for the children. At the time of the relocation hearing, the marital home was under contract for sale. Necessarily, this sale will disrupt the children's routine and their sense of "home." Mother's attorney contacted the Court and Father's attorney via email on July 14, 2016, to disclose that the marital residence was under agreement of sale, and he stated that, "She [Mother] has also asked me to request that the children not be told of this just yet, again because of the pending case. She told me that she intends to tell Mr. W██████, today, and ask him not to tell the children just yet." This statement gives rise to an inference that knowing they would have to move will be upsetting to the children. See, Ex.1. Pennsylvania Court's has long recognized that the removal of a young child from his environment is a factor which bears upon his emotional well-being. *Hugo v. Hugo*, 420 A.2d 1183 (Pa.Super. 1981).

5

As the Pennsylvania Superior Court stated in, *D.K.D. v. A.L.C.*, 141 A.3d 566 (Pa. Super. 2016), "the evidence of record supports the ... finding that Mother neglected to make a sincere unencumbered effort to find employment in Pennsylvania or, ....maintain the marital residence to avoid removing L.D. from his stable environment and steady routine." *Id.* at 577. In *D.K.D.*, the Mother had filled out 800 applications through the USA JOBS website, predominantly in Florida, but had filled out some applications for Pennsylvania. *Id.* at 577. Here, the testimony at trial was that Mother had only applied for one full time position in Pennsylvania and that she had been committed to moving to South Carolina as early as December of 2014. Based upon Mother's failure to pursue full time employment in Pennsylvania so that she could afford the marital residence after the final alimony payment in December of 2016, the marital residence had to be sold regardless of whether or not this Court granted Mother's relocation petition and request for modification. This certain disruption to the children's stable environment, prompted the Court in considering the children's best interest to evaluate Father's desire to take a larger role in raising his children than he had been previously provided with under the March 26, 2015 Custody agreement. The Court considered all the evidence and found that the possibility of harm arising from disruption of longstanding patterns of care was negligible, as the children have only been in Mother's primary care since April of 2014, and Father still sees the children and performs paternal duties two weeknights a week and every other weekend. Moreover, because of Mother's actions, the children will be forced to adjust to a new home with Mother, regardless of any change to the Custody Order and they will benefit from overnights with Father during the week that will occur in their paternal grandparents home, where they have been used to staying with Father since April of 2014. The shared physical custody arrangement will benefit the children with continuity and stability in custody

6

arrangements and their surroundings.

The United States Supreme Court has long held that "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Massachussetts,* 321 U.S. 158, 167 (Pa. 1944). While, "[T]he Act of November 23, 2010 is, in a sense, a radical departure: the Statute dispenses with any reference to public policy that it is in the best interests of children to permit them to maintain a meaningful relationship with both parents," both parents active involvement in their children's lives remains the state's goal. 17 West's Pa. Prac., Family Law §28:2 (7th ed.); 23 Pa. C.S.A. §5328(a)(1). For instance, in child support matters, the Courts have sought to provide the child with at least the, "legal and financial benefits of a parental relationship," but have stated that, "we hope that [the husband's] heart will follow his money." *K.E.M. v. P.C.S.,* 38 A.3d 798, 809 (Pa. 2012)(internal citations omitted).

Here, Mother's sale of the marital residence and uncertainty of her future living arrangements has already disrupted the children's established pattern, and the shared physical custody award will minimize the harm to the children. The evidence adduced at trial demonstrated that both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children. Both parents have expressed a continuing desire for active involvement in their children's lives and have supported their words with their actions of: feeding and clothing their children, addressing their educational needs, playing with them, taking them to activities and attending events important to the children, such as T.W.'s dance recital. The children recognize both parents as a source of security and love. There has been conflict between the parents, however they have demonstrated the ability to keep the conflict from interfering with the custody arrangements and have demonstrated a willingness

7

to cooperate with each other. Thus, the Court believes that the record demonstrates that all four of the factors regarding an award of shared legal and physical custody have been met such that shared physical custody of the children is in their best interest and that the Court's award of shard physical custody was not against the weight of the evidence nor constituted an error of law or abuse of discretion. *See R.S. v. T.T.,* 113 A.3d at 1261.

## Modifying the Custody Order after Denying Mother's Request to Relocate

Mother's fourth, fifth, and sixth contentions of errors all challenge this Court's decision to Modify the existing Custody Order to grant Father shared physical custody after denying Mother's request to relocate to South Carolina. Father chose to withdraw his Petition to Modify the Custody Order at the time of the relocation hearing in this case, because he had not yet secured a residence in the children's current school district. The parties discussed the withdrawal of Father's petition to modify on the record before the trial commenced. See Notes of Testimony, N.T., 7/8/2016, at 7:13-10:19. The Court clearly informed counsel, "Everything is in the air here for this family. I think that, you know, your filing this action today opens the door for the Court to modify the custody arrangement, and not to simply deny relocation." See N.T., 7/8/2016, at 10:12-16. Thus, both parties were aware of the Court's position that Mother's *Answer and New Matter to Defendant's Petition for Modification of Custody* filed March 16, 2016, required a Modification of the March 26, 2015 Custody Order, and thus opened the door to a new Custody Order. Both parties proceeded to present evidence of not just the ten relocation factors contained at 23 Pa.C.S.A. §5337, but also the sixteen custody factors contained in 23 Pa.C.S.A. § 5328(a). Thus, the parties' due process rights were satisfied as the parties had adequate notice to prepare for a full custody hearing, as the Father's Petition to Modify Custody was not withdrawn until the time of the trial and a full and fair opportunity to litigate the custody

8

issues at the trial. This case also involved evolving circumstances, the Court was aware that the marital residence needed to be sold by September at the time of trial and had been informed by Mother's attorney that the home was under contract of sale, at the time the Court issued the Final Custody Order on August 1, 2016, and that the children would necessarily have to move somewhere.

Generally, the Court may not modify a custody order in the absence of a petition for modification. *Seger v. Seger,* 545 A.2d 376 (1988). However, any case involving a request for relocation, necessarily involves consideration of custody issues, because in the event that the Court grants a proposed relocation request, the Court must, following , 23 Pa.C.S.A. §5337(g)(4), modify the existing custody order or establish a new one. Once the Court has been summoned to examine the best interests of the children, whether through the initial filing of a custody complaint, a petition to modify custody, or a Petition for Relocation, the Court owes an obligation to the children to prioritize their best interests and minimize any harm to children. This is not a simple relocation case, where if the relocation is denied, the parties can continue without change to their existing custody order. The consequence of any denial of a proposed relocation creates uncertainty, as it is unknown whether a parent will forego their custody rights and move to the proposed relocation without their children. Mother informed the Court that she could not on her current salary afford to rent a home in the children's current school district. This resulted in ambiguity as to where the children would attend school in the few remaining weeks of summer following the issuance of the August 1, 2016, Final Custody Order. Here, the Mother's income and future residence were unknown, and the Court found it expeditious to modify the Custody Order to create stability for the children.

If the Pennsylvania Superior Court finds that it was inappropriate for this Court to enter a

9

final custody order, where Father withdrew his Petition to Modify, this Court requests that its August 1, 2016, Order of Court, be upheld as a temporary modification of the custody order while Mother finds her new employment and new housing, and the children begin school in Lehigh County. See *Choplosky v. Choplosky,* 584 A.2d 340, 343 (Pa. Super. 1990)(A trial court may temporarily modify custody order despite lack of petition to modify, where temporary modification of custody will preserve the well being of children involved while parties prepared to resolve more permanently the question of where or with whom children should remain.).

**Consideration of all of the Custody Factors**

Mother's seventh contention of error is that this Court adequately failed to consider the custody factors under 23 Pa. C.S.A. §5328(a), in making the determination that the children's best interests required an award for shared physical custody. From the outset, we observe that Mother is correct that the new Child Custody Act, 23 Pa. C.S. §§ 5321-5340, applies to the case at hand because Mother filed her Complaint for Custody after January 24, 2011, the effective date of the new law. *See E.D. v. M.P.,* 33 A.3d 73 (Pa. Super. 2011). Under this Act, when a party files for custody, the Court is to determine in whose custody the best interests of the child would be served using the factors found in 23 Pa. C.S.A. §5328. Both parties have the burden of proof by a preponderance of the evidence, as in custody disputes between natural parents, "the parents are viewed as having an equal interest in the child's welfare and thus the evidentiary scale is evenly balanced at the outset." Bertin, Pennyslvania Child Custody §7:1; *Sawako v. Sawko,* 625 A.2d 692 (Pa. 1993); 23 Pa.C.S.A. §5327 (a). However, in the custody relocation context, the party seeking to relocate has the burden of establishing that relocating is in her children's best interest and each party has the burden of establishing the integrity of their motives in seeking or opposing the relocation and modification. See 23 Pa.C.S.A. §5337(i).

10

The paramount concern in any child custody case is the best interest of the child. *Durning v. Balent/Kurdilla,* 19 A.3d 1125, 1128 (Pa. Super. 2011). Determining the best interests of the child requires a "case-by case assessment of all of the factors that may legitimately affect the 'physical, intellectual, moral, and spiritual well-being' of the child." *Landis v. Landis,* 869 A.2d 1003, 1011 (Pa. Super. 2005). Title 23 Pa.C.S.A. §5328 sets forth fifteen (15) specific factors that the Court is required to determine in deciding the best interest of the children in a custody proceeding "giving weighted consideration to those factors which affect the safety of the child." These factors include: (1) which party is more likely to encourage and permit frequent and continuing contact between the children and the other parent; (2) present and past abuse committed by a parent or member of the parent's household; (2.1) the information set forth in section 5329.1(a)(relating to consideration of child abuse and involvement with protective services); (3) the parental duties performed by each parent on behalf of the children; (4) the need for stability in the children's education, family and community life; (5) the availability of extended family; (6) the children's sibling relationships; (7) the well-reasoned preference of the children; (8) the attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm; (9) which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for their emotional needs; (10) which parent is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children; (11) the proximity of the residences of the parents; (12) each parent's availability to care for the children or ability to make appropriate child-care arrangements; (13) the level of conflict between the parents and the willingness or ability of the parents to cooperate with one another; (14) the history of drug or alcohol abuse of a parent or member of the parent's

11

household; and (15) the mental and physical condition of a parent or member of the parent's household. 23 Pa.C.S.A. §5328. 23 Pa.C.S.A. §5328 concludes with a sixteenth general factor of, "any other relevant factor." *Id.*

This Court, as required, appropriately considered all sixteen factors pursuant to 23 Pa. C.S.A. §5328 in reaching its decision to award Father with shared physical custody and discussed the factors in our Memorandum Opinion of August 8, 2016, in Support of the August 1, 2016 Final Custody Order. The Court included in a footnote its discussion and consideration of the factors that it found to be neutral or not at issue in this particular case. The Court stated:

> There are statutory factors for awarding custody and for relocation that are not issues in this case. There were no allegations that either parent withheld the Children from the other parent. The current custody schedule was agreed upon and provides Father with frequent contact. There was no allegation of a pattern of conduct of either parent to promote or thwart the relationship with the other parent. 23 Pa.C.S.A. § 5328(a)(1) 23 Pa.C.S.A. § 5337(h)(5). There was no testimony of attempts by either party to turn the children against the other parent, 23 Pa.C.S.A. 5328(a)(8). There have been no issues of child abuse or involvement of protective services. 23 Pa.C.S.A. § 5328(a)(2.1). The Children are not being separated and there is no step or half siblings to be considered, 23 Pa.C.S.A. § 5328(a)(6). The relocation factors and the custody factors consider the preference of the Children. 23 Pa.C.S.A. § 5337(h) (4) and 23 Pa.C.S.A. § 5328(a)(7). While the Court believes that the Children are old enough to comprehend the custody litigation, the Court chose not to interview them. The Children were visibly upset at an attempt to interview them and were upset prior to coming into Court. The Court concluded that given their maturity it would not be in their best interview to subject them to an interview. Neither parent insisted that they be interviewed. There was no issue that with either party's availability to care for the child or ability to make appropriate child-care arrangements. 23 Pa.C.S.A. § 5328(a)(12). There is no history of drug or alcohol abuse of a party or member of a party's household or mental or physical condition that impacts custody. 23 Pa.C.S.A. § 5328(a)(14) and (15).

August 6, 2016, Mem. Opinion, P.8, Fn.3. While this discussion of many of these factors is brief, "the Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013). In *M.J.M.,* the Pennsylvania

12

Superior Court held that,

> Contrary to Mother's argument, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. For example, from the trial court's Explanation of Decision in the case at bar, it is clear that while the trial court found the majority of the section 5328(a) factors to balance fairly equally between Mother and Father, the trial court found that Father was more likely to promote a relationship with Mother than Mother would with Father and that Mother's attention to Child's educational needs was a point of grave concern. The trial court further concluded that Father would better attend to these needs. Explanation of Decision, 8/16/12, at 1–9. Thus, in its Explanation of Decision, the trial court did precisely what it should have done; it weighed the entirety of the section 5328(a) factors in making the custody determination and articulated its considerations in a manner that informed the parties of the reasons for the custody award.

*Id.* at 336(footnotes omitted). The one factor that was arguably not specifically cited to in regards to the shared physical custody was the proximity of the residences of the parents here in Lehigh County. This is because as of the time of trial, the parties did not know where Mother would reside after the sale of the marital residence. Thus the only distance the Court had to evaluate at that time was the distance between Father's residence in Allentown and Mother's proposed new residence with her Mother in South Carolina. Thus the Court considered all the required custody factors in 23 Pa.C.S.A. §5328 (a) in reaching the determination that the children's best interests would be served by an award for shared physical custody and Mother's seventh contention of error is meritless.

### Weight of the Custody Factors

Mother's eight contention of error is that the Court inadequately weighed the factors under 23 Pa. C.S.A. §5328 (a) (3), (9), (10), and (12) in the determination that the children's best interest required an award for shared physical custody. The Court dealt with factor (12)

13

summarily in footnote 3 to the Memorandum Opinion of August 6, 2016, stating "[t]here was no issue that[sic.] with either party's availability to care for the child or ability to make appropriate child-care arrangements." The evidence produced at trial showed that the children were cared for almost exclusively by the parents or extended family members. Father and his Father testified that Father spent almost every minute of his custody time with the children during the week, with the children. The Court addressed Mother's complaints about Father's meals medication, and tardiness. The Court found that Father is a good parent and that Mother trusts Father as a parent. The record reflected that Mother is a primary caregiver and was available to care for the child or make appropriate child-care arrangements. Thus the Court did not error in weighing this factor as neutral.

In regards to the tenth factor, "which parent is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children," both parties testified about attending to their children's needs on a regular consistent basis. Both parties tuck their children in at night, feed, clothe, and bathe the children. It is true that Mother was the primary care giver, particularly when the parties were married, but Father was the traditional breadwinner and had less time available to care for the children. It has long been held that the "fact that a parent must work is not a factor that may be used to deprive that parent of custody where adequate arrangements have been made for child's care in parent's absence." *Witmayer v. Witmayer*, 467 A.2d 371 (Pa. Super. 1983). Since separation, Father has been actively involved in the children's lives and attending to the children's daily needs while they are in his care. Thus, the Court did not inappropriately weigh the tenth custody factor in reaching its determination that the factor was equally established.

The Court addresses the weight given to 23 Pa. C.S.A. (9) below with Mother's tenth

14

contention of error regarding the Court's conclusion that Father is more stable in his circumstances at this time. There was credible testimony from both parents about the many parental duties each parent performs on behalf of the children, thus Mother's contention that the Court inadequately weighed 23 Pa.C.S.A. §5328(a)(3) to be neutral is not supported from the record. Thus, Mother's eighth contention of error is meritless.

**Mother's Role as Primary Caretaker**

Mother's ninth contention of error is that this Court inadequately weighed Mother's role as the primary caretaker of the children in its determination that the children's best interests required an award for shared physical custody. The Court specifically stated that, "since separation, Mother has been the primary caretaker of the Children in the marital residence." August 6, 2016, Mem. Opinion, P.6. The Court further discussed Mother's role as the parent primarily responsible for attending to the Children's needs on Page 9 of the Memorandum Opinion, but also discussed all that Father has done to perform parental duties since the parties separation. *See id.,* at P.9-10. The "primary caretaker doctrine" was formerly used by Pennsylvania Courts in custody cases, "to tip the scales in favor of the primary caretaker in a situation where the trial court deemed both natural parents to be fit to act as a primary custodian" *M.J.M. v. M.L.G.,* 63 A.2d. at 337-338. In *M.J.M.,* the Pennsylvania Superior Court described in length the evolution of this primary caretaker doctrine:

> [O]n January 24, 2011, major revisions the Custody Act took effect. *See* 23 Pa.C.S.A. § 5321 *et.seq.* These revisions included the addition of section 5328, which, as discussed above, sets forth a list of factors that a trial court must consider when making a custody determination. Prior to listing the specific factors, this provision provides: "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S.A. § 5328(a).

15

The language of this statute is clear. It explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" *Id.* "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see also Ario v. Ingram Micro, Inc.,* 600 Pa. 305, 317, 965 A.2d 1194, 1201 (2009). If the Pennsylvania Legislature intended for extra consideration be given to one parent because of his or her role as the primary caretaker, it would have included language to that effect. Stated another way, the absence of such language indicates that our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker.

Furthermore, the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. *See, e.g.,* 23 Pa.C.S.A. §§ 5328(a)(3) ("The parental duties performed by each party on behalf of the child."); (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.

In short, the Legislature has created a mandatory inquiry to aid trial courts in determining the best interests of the child in a custody dispute. In doing so, it articulated the components of a parent's obligations and characteristics, and a child's needs and welfare, that must be incorporated in the trial court's custody decision where the parents are incapable of doing so on their own. In setting forth these factors, the Legislature has required the trial court to give additional weight *only* to factors that it finds affect the safety of the child. This language is clear, and we cannot expand it to provide that a trial court must also give weighted consideration to a party's role as primary caretaker. We simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the Legislature has established, and so we conclude that the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable.

We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16). It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See A.D. v. M.A.B.,* 989 A.2d 32, 35–36 (Pa.Super.2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

16

*Id.* at 338-339 (Fn.10 omitted). Here the Court considered Mother's role as the primary caretaker in the analysis of the 23 Pa.C.S.A. §5328(a) factors. Mother is not entitled to additional weighted consideration for this role and thus Mother's ninth contention of error is without merit.

**Finding of Father's Stability**

Mother's tenth and eleventh contentions of error challenged this court's finding that Father is the more stable parent with respect to his residence. Mother alleges that this Court improperly concluded that Father is more stable in his circumstances, because the Mother intended to vacate the former marital residence and it was "unknown to the court where the Children will attend school this fall." Mother also alleges that, because Father had indicated an intention to move to a new residence in the near future, the Court erred in finding that Father is the more stable parent with respect to his residence. The Court considered stability in the parents circumstances in accordance with custody factor 23 Pa.C.S.A. §5328(a)(9), "which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for their emotional needs." The Court also looked at stability in regards to 23 Pa.C.S.A. §5328 (a) (4), "the need for stability in the children's education, family, and community life."

At the time of the custody trial, father was currently living with his parents, the children's paternal grandparents in Allentown. The children were familiar with this residence and had been staying there overnight with Father on alternating weekends at the very least since March 26, 2015. See N.T., 7/8/2016, at 189:4-8. Father chose to stay with his parents, because he knew their house had enough bedrooms to accommodate the children, and "[i]t was a good, safe,

17

place." Father has been employed at the same company, ⬤, as an implementation engineer for nine and a half years. See N.T., 7/8/2016, at 190:25-191:17. He works Monday, Wednesday, Friday from 8:30 to 5:30 down in Pottsville; and then Tuesday, Thursday, he works from 8 am to 4 pm from home. See N.T., 7/8/2016, at 191:23-25. Father testified that after his name is removed from the mortgage on the marital residence and the alimony payments to Mother cease in December he does plan on moving out and buying a home. See N.T., 7/8/2016, at 210:1-15. Counsel for Father indicated to the Court that Father intends to obtain an address in the children's current school district. See N.T., 7/8/2016, at 9:7-9. This will provide the children with stability in a residence, education, and family and community life. The removal of a small child from its environment is a factor which bears upon a child's emotional well-being for purposes of awarding custody. *Custody of Phillips*, 394 A.2d 989, 992 (Pa. Super. 1978). Here, Father is not relocating until December of 2016, while Mother is of necessity relocating very quickly because of the pending sale of the marital residence. Father's current residence is a known, safe and good place for the children. Father's stable long term employment and his commitment to buying a house in the children's current school district will enable the children to maintain continuity in their friendships, schooling, afterschool activities, and relationships with extended family. Father testified that over the summer, "my sister watches them on Tuesdays. My mom watches them Wednesday, Thursday, Friday, and that's the way it's been all summer." See N.T., 7/8/2016, at 216:10-14. The children have not been in childcare and have been cared for all by extended family and friends. See N.T., 7/8/2016, at 216:22-217:5. This establishes continuity for their family life, which helps contribute to a loving, stable, consistent, and nurturing relationship with the children adequate for their emotional needs.

Mother, on the other hand, was aware at the time that she signed the property settlement

18

agreement, December 21, 2015, that she would need to find full time employment in order to be able to afford the marital residence at the end of the alimony payments in 2016, and that she needed to refinance the mortgage by September of 2016. Despite this knowledge, Mother only applied for one full time position in Lehigh Valley. The testimony at trial demonstrated that Mother had been planning on moving to South Carolina since December of 2014, helped her fiancé move to South Carolina, helped her mother move within ten miles of her fiancé in South Carolina, and neglected to make a sincere, unencumbered effort to find employment in Pennsylvania or maintain the marital residence. *D.K.D.*, 141 A.3d at 577 . The record reflects that Mother was determined to move to South Carolina, and that she purposefully directed all of her available resources toward that state, rather than Pennsylvania and the maintenance of a loving, stable consistent relationship with the children focused on their emotional needs. *Id.* A court "must consider the importance of continuity in the children's life and desirability of development of stable relationship with established parental figure and *known physical environment.*" *Gerber v. Gerber*, 487 A.2d 413, 416(Pa. Super. 1985). The Court found that as a result of, "Mother's failure to find full time employment, Mother and Children will be vacating the residence where the children have resided for the past four years." Mother has had various part-time positions and now works at ███████ Hair Salon for about 30 hours a week where she earns $989.71 per month. See N.T., 7/8/2016, 13:4-17:21. It is unknown where Mother will choose to reside as she will also need to pursue full time employment to support herself. Mother is scheduled to marry her Fiance in December of 2016, he lives in South Carolina. Thus, while Father's residence may change to the children's current school district in December, Mother's residence is a complete unknown. Therefore, the Court did not err finding that Father is the more stable parent with respect to his residence. Because of the sale of the marital residence, it

19

is unknown to the Court where the children will attend school this fall, Father's current residence is in the Allentown School District, Mother made no alternative plans for housing in the children's current school district should her relocation petition be denied. This ambiguity in where the children will attend school does effect the children's emotional stability and the stability in their educational life. The Court did not tie the finding, "it is unknown where the Children will attend school this fall" to Father's stability. See August 6, 2016, Mem. Opinion, P.11. Moreover, the Court emphasized that, "at this time, it appears that Father is more stable in his circumstances; **however this is but one factor.**" See *Id.*(emphasis added). Thus, the Court did not put undue weight on this single factor, and did not err in concluding that Father is more stable in his circumstances.

**Immediate Uncertainty with Respect to the Children's Schooling**

Lastly, Mother contends that because the court denied Mother's planned relocation, this Court "erred in weighing against Mother the immediate uncertainty with respect to the children's schooling as an indication of Mother's instability supporting the court's modification of Mother's primary physical custody to an award of shared physical custody." Mother provided Father with Notice of her Proposed Relocation to South Carolina by letter in January of 2016. Father promptly filed an objection to the Proposed Relocation and a Petition to Modify Custody in February of 2016. Mother has been on notice since that time that her request to move the children to South Carolina might not be granted. She has also been on notice since December of 2015, that she could not afford to stay at the marital residence without full time employment past September of 2016 when she would have to have secured refinancing of the mortgage. The Children's school district is determined by their primary address. Despite this knowledge, Mother has done nothing to secure an alternate address in the children's current school districts

20

thus it was not improper for the Court to consider Mother's failure to plan for the children's schooling as the Court is instructed to consider "any relevant factor" in the best interest analysis. 23 Pa.C.S.A. §5328(a)(16).

**Conclusion:**

We respectfully request that the August 1, 2016, Final Custody Order be affirmed. If Mother wishes to regain primary custody of her children, in light of her new living arrangements, she should file a petition for modification pursuant to 23 Pa.C.S.A. §5328(a) and the trial court would be able to hold a hearing and render a custody determination utilizing the 23 Pa.C.S.A. §5328(a) best-interest factors in light of the new circumstances. *See D.K.D. v. A.L.C.,* 141 A.3d 566, 580 (Pa. Super. 2016).

BY THE COURT:

Michele A. Varricchio, J.

21

**Leslie Kutney**

From: John J. Zettlemoyer, Jr. [jjzj@ptd.net]
Sent: Thursday, July 14, 2016 4:19 PM
To: Leslie Kutney; detaglioli@markowitzandrichman.com
Cc: A███ W████
Subject: W██ v. W████

Judge Varricchio & Attorney Taglioli: My client has just informed me that her residence in Emmaus is now under agreement of sale. I advised her that I thought it best, in light of the pending case, to inform you, rather than to hold this information back. She has also asked me to request that the children not be told of this just yet, again because of the pending case. She told me that she intends to tell Mr. W████ today, and ask him not to tell the children just yet. At this time I know of no further details about the sale.

John J. Zettlemoyer, Jr., Esq.
Zettlemoyer Law Office, LLP
53 North Third Street
Emmaus, PA 18049
(610) 967-4654
Fax: (610) 965-3420
john@zettlemoyerlaw.com
http://www.zettlemoyerlaw.com

This e-mail message and any attached file is only for the use of the individual or entity to which it is addressed, and may contain information that is legally privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivery of this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail or any attachment is strictly prohibited. Nothing in this e-mail should be construed as a legal opinion. If you have received this e-mail in error, please notify the sender by e-mail, immediately, and delete or destroy the original and all copies of this e-mail.

Exhibit 1

1